**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY JERROLD KIPP** | § | |
| | § | |
| **V.** | § | **A-16-CA-243-RP** |
| | § | |
| **LORIE DAVIS** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1) and Respondent's Answer (Document 13). Petitioner, represented by counsel, did not file a response thereto. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

**STATEMENT OF THE CASE**

**A.    Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 368th Judicial District Court of Williamson County, Texas, in case numbers 13-0658-K277 and 13-0622-K277, each styled *The State of Texas v. Timothy Jerrold Kipp*.

In those cases, Petitioner agreed to plead guilty in exchange for two concurrent twenty-year terms of confinement.

Petitioner did not file a direct appeal.  He did, however, challenge his convictions in two state applications for habeas corpus relief.  The Texas Court of Criminal Appeals denied the state applications without written order on the findings of the trial court without a hearing on February 17, 2016.  Ex parte Kipp, No. 84,315-01 and -02.

**B.     Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1.      His plea was involuntary due to counsel's inadequate investigation;

2.      His trial attorney represented him ineffectively by failing to engage in sufficient pre-trial investigation;

3.      His sentence is cruel and unusual because his sentence was greater than his co-defendants but he was less culpable; and

4.      The severity of his sentence compared to his co-defendants violates his equal protection and due process rights.

**C.     Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application.  A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

**<u>DISCUSSION AND ANALYSIS</u>**

**A.     The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.   See Harrington

v. Richter, 562 U.S. 86, 97–100 (2011).  The Court noted that the starting point for any federal court

in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in the
>         State court proceeding.

28 U.S.C. § 2254(d).  The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim

'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."

Harrington, 562 U.S. at 98.

One of the issues Harrington resolved was "whether § 2254(d) applies when a state court's

order is unaccompanied by an opinion explaining the reasons relief has been denied."  Id.  Following

all of the Courts of Appeals' decisions on this question, Harrington concluded that the deference due

a state court decision under § 2554(d) "does not require that there be an opinion from the state court

explaining the state court's reasoning."  Id. (citations omitted).  The Court noted that it had

previously concluded that "a state court need not cite nor even be aware of our cases under

§ 2254(d)."  Id. (citing Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).  When there is no

explanation with a state court decision, the habeas petitioner's burden is to show there was "no

reasonable basis for the state court to deny relief."  Id.  And even when a state court fails to state

which of the elements in a multi-part claim it found insufficient, deference is still due to that

decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."
Id.

As Harrington noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. Id. at 100 (citing 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

Id. at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. See 28

4

U.S.C. § 2254(e)(1).  But absent such a showing, the federal court must give deference to the state court's fact findings.  Id.

**B.     Guilty Plea**

Petitioner challenges the voluntariness of his plea and the assistance he received from counsel.  To be valid, a guilty plea must be voluntary, knowing and intelligent.  United States v. Washington, 480 F.3d 309, 315 (5th Cir. 2007).  The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 31 (1970).  A court assessing the validity of a plea must look to "all of the relevant circumstances surrounding it and consider such factors as whether there is evidence of factual guilt."  Matthew v. Johnson, 201 F.3d 353, 364-65 (5th Cir. 2000).  The defendant must also have notice of the charges against him, understand the constitutional protections that he has waived, and have advice from competent counsel.  Washington, 480 F.3d at 315 (citation omitted).  Furthermore, the defendant must be competent, and the plea must "not be the product of 'actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant' or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel."  Matthew, 201 F.3d at 365 (quoting Brady v. United States, 397 U.S. 742, 750 (1962)).  The trial court must inform the defendant of the consequences of his plea, but "the defendant need only understand the direct consequences of the plea; he need not be made aware of every consequence that, absent a plea of guilty, would not otherwise occur."  United States v. Hernandez, 234 F.3d 252, 255 (5th Cir. 2000) (per curiam).

A guilty plea "and the ensuing conviction encompasses all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence."  United States v.

Broce, 488 U.S. 563, 569 (1989).  A plea of guilty amounts to more than a mere confession; it is

instead "an admission that [the defendant] committed the crime charged against him." Id. at 570.

A voluntary guilty plea waives all non-jurisdictional defects in the proceedings except claims of

ineffective assistance of counsel relating to the voluntariness of the plea. United States v. Glinsey,

209 F.3d 386, 392 (5th Cir. 2000); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann v. Richardson, 397 U.S. 759, 770-71, 90 S. Ct. 1441 (1970).

Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also United States v. Cothran, 302 F.3d 279,

285-86 (5th Cir. 2002) (holding "[a] plea of guilty admits all the elements of a formal criminal

charge and waives all non-jurisdictional defects in the proceedings leading to conviction").

A guilty plea is "open to attack on the ground that counsel did not provide the defendant with

'reasonably competent advice.'" Cuyler v. Sullivan, 446 U.S. 335, 344 (1980) (quoting McMann

v. Richardson, 397 U.S. 759, 770-71 (1970)).  "Counsel is needed so that the accused may know

precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so

that he is treated fairly by the prosecution." Argersinger v. Hamlin, 407 U.S. 25, 34 (1972).

Counsel's advice to a defendant to accept a proposed plea agreement, in light of the facts and

circumstances of the case, is normally considered to be a strategic choice that rests within counsel's

professional judgment. See Black v. Collins, 962 F.2d 394, 401 (5th Cir. 1992).  To establish a

claim that trial counsel's defective assistance rendered a plea involuntary, the petitioner must show

that counsel's representation fell below an objective standard of reasonableness and a reasonable

probability exists that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

There is no evidence in this case that Petitioner did not have a clear understanding of the proceedings against him, the nature of the offense for which he was charged, or the consequences of entering his plea. Petitioner was admonished with regard to the range of punishment, signed the waiver of rights and agreements in connection with plea of guilty, and confessed he committed the charged offenses as alleged in the indictment or information. There is simply no evidence that Petitioner's plea was not voluntary, knowing and intelligent or that he received ineffective assistance of counsel with regard to his plea.

On state habeas review trial counsel provided the state court with his sworn affidavit. *See* Dkt. # 12-3. Counsel detailed the assistance he provided to Petitioner. The state court found counsel to be credible, specifically finding:

> 19.     Mr. White makes clear in his affidavit that he reviewed and analyzed all the discovery he received and that, while he did provide advice, analysis, and explanations to Applicant; he never coerced or pressured applicant to accept or reject any offer on the case. Instead, Mr. White did as he should, advising Applicant of the pros and cons of the offers made as well as his analysis of the case and of the possible defenses at trial and his judgment regarding the likely outcome of trial. However; Mr. White has credibly sworn that he made clear to Applicant that it was Applicant's choice whether to accept or reject any plea bargain offered.

> 31.     In addition to the information related above, Mr. White's affidavit makes clear that he investigated and considered multiple defenses and evidence. As discussed more specifically below, the "errors" upon which Applicant relies as a basis for his claims, are in fact strategic choices and considerations that comprise a reasonable trial strategy that Mr. White made consciously decided upon after due evaluation of the law and facts and due consideration of alternative legal strategies.

> 32.     The fact that Applicant has now decided he dislikes those decisions or the plea agreement that he ultimately accepted does not suddenly render Mr. White's representation ineffective.

33.     Mr. White makes clear that contrary to Applicant's assertions, he was aware of Brian Arredondo's [the victim's] criminal history and prior drug use. However, Mr. White judged the strategic value of this impeachment evidence as weak in light of the other witnesses to the crime that could corroborate much of Mr. Arrendondo's anticipated testimony as to the elements of the crime as well as otherwise shore up any weaknesses to the State's case said impeachment evidence might present.

34.     Mr. White had numerous meetings with Applicant to discuss the evidence and strategy.    In fact, the discovery issues upon which Applicant relies further demonstrate Mr. White's competence. Mr. White had difficulty reviewing digital discovery with Applicant due to restrictions imposed by the Williamson County jail on taking electronic devices into the jail.   Initially, Mr. White went over the discovery orally, engaged in discussions with Mr. White, and took notes on Mr. White's representations.  However, Mr. White also presented the problem of these restrictions to this Court and this Court granted Mr. White use of the jury room on dates when no trial was scheduled or held for the sole purpose of allowing Mr. White a location within which to review with Applicant items of discovery he could not review in the Williamson County Jail.  Mr. White did review with Applicant such items including digital photographs and recordings.

35.     Applicant initially expressed no interest in a plea agreement and asserted that he was working at the time of the offense.  Mr. White investigated that possible defense and obtained records showing he worked the previous day rather than the day the crime occurred.  Applicant then told White that he was sleeping at the time of the kidnapping and not present.  Mr. White investigated further and learned that evidence connected Applicant to a ski mask described by the victims.  Applicant told Mr. White that he had lent his ski mask to a friend.

36.     Mr. White investigated further and continued discussions with Applicant leading up to trial.  When Mr. White explained concerns regarding limitations upon a successful trial strategy imposed by the "selfie" photograph taken of Applicant at the gas station/convenience store near where the kidnapping occurred, in the hour before the kidnapping, Applicant then admitted to Mr. White that he was with the co-defendants in the related vehicle when the photo was taken.   Applicant then communicated to Mr. White that he had decided to accept a plea agreement and no longer wanted a trial.

37.     Thus, Mr. White's investigation was hampered by statements and representations made to him by Applicant that Mr. White's investigation later revealed were false.  Applicant's deception caused Mr. White to use a portion of his investigation and preparation time chasing defenses that later turned out to be unhelpful to Applicant.  These efforts by Mr. White illustrate diligence, dedication, and trust in his client.

38.   Mr. White made the conclusion, as part of a valid and reasonable trial strategy, that it would be unhelpful to subpoena the victim's medical records and/or argue the victim was "in on" or complicit in the kidnapping given that existence of multiple witnesses to the victim's forcible removal by masked assailants armed with firearms.

39.   Mr. White, as part of a valid and reasonable trial strategy, determined that it would be unhelpful to argue or assert defensive theories now proposed by Applicant regarding periods of time without restraint or similar arguments detailed in the instant applications because he anticipated the rebuttal that a kidnapping victim often appeases his captors and will comply without restraint.   He viewed this rebuttal strong enough to defeat the defensive argument given the nature of the description of fear the victim gave and the severity of the facts to which the victim and other witnesses could testify.

40.   Mr. White visited with Applicant on many occasions and communicated with Applicant regarding the need for character witnesses other than Applicant's parents. Through the course of these conversations and Mr. White's investigation and analysis of the instant case, Mr. White learned that Applicant's immediate friends other than his co-defendants were drug users whose credibility the State could attack to the point of compromising their strategic value to Applicant's defense.  Mr. White thus reasonably and diligently investigated potential mitigating or character witnesses, further demonstrating the effectiveness of his representation of Applicant.

Ex parte Kipp, Appl. No. 84,315-01 at 23-26.  The state court concluded that Petitioner had not provided proof to overcome the presumption that his trial counsel acted in pursuance of a reasonable trial strategy.  Id. at 26.  In addition, the state court concluded trial counsel did pursue reasonable trial strategies during the course of his representation and considered a variety of defenses and limitations when he advised Petitioner.  Id.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, Petitioner's claim does not warrant federal habeas relief.

**D.      Cruel and Unusual Punishment**

In his next ground for relief Petitioner argues his sentence is cruel and unusual because he received a disparate sentence from his co-defendants and his sentence is discordant with prevailing practices and evolving standards in other countries, such as Canada and the Netherlands. Specifically, he complains his 20-year sentences are more harsh than his co-defendants' 15-year and 6-year probated sentences.  In addition, he asserts the maximum sentence for kidnapping in the Netherlands is eight years and in Canada is seven years.  Petitioner cites no legal authority in support of his claims.

Petitioner raised these same issues in his state applications for habeas corpus relief, which were rejected on the merits by the state court.  As such, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Petitioner's claims by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

On state habeas review the state court pointed out it sentenced Petitioner to an agreed sentence of 20 years for aggravated kidnapping and aggravated robbery and ordered the sentences to run concurrently.  In addition, the state court noted it considered a count of aggravated assault with a deadly weapon during sentencing under Section 14.25 of the Texas Penal Code.  The court further noted the range of punishment for aggravated kidnapping and aggravated robbery was 5-99 years or life.  The state court concluded the two concurrent 20-year sentences imposed in Petitioner's case were within the punishment range established by the legislature and Petitioner failed to show his

sentences were "grossly disproportionate."  The court declined to compare his sentences to those sentences imposed in Canada and the Netherlands.

The Eighth Amendment to the Constitution prohibits a sentence that is grossly disproportionate to the severity of the crime for which it is imposed.  Solem v. Helm, 463 U.S. 277, 288 (1983).  "The proportionality principle does not compare sentences among co-defendants but instead considers only whether a sentence is grossly disproportionate to the crime."  Witmer v. Houston, 2006 WL 3698911 (D. Neb. Dec. 14, 2006) (citing Lockyer v. Andrade, 538 U.S. 63, 70 (2003)). When evaluating an Eighth Amendment proportionality challenge, a court makes a threshold comparison between the gravity of the charged offense and the severity of the sentence being challenged.  McGruder v. Puckett, 954 F.2d 313, 315–16 (5th Cir. 1992).  In non-capital cases, successful challenges to the proportionality of particular sentences are "exceedingly rare." Rummel v. Estelle, 445 U.S. 263, 272 (1980).  In general, a sentence assessed within statutory limits is not excessive, cruel, or unusual, "unless it is so disproportionate to the offense as to be completely arbitrary and shocking."  Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975).

After considering the sentences imposed, the punishment authorized by the state legislature for Petitioner's offenses, and the seriousness of Petitioner's offenses, the Court is unable to conclude that his sentences were grossly disproportionate.  As a result, the conclusion of the state courts with respect to this ground for review was not contrary to, and did not involve an unreasonable application of, clearly established state law.

E.      **Due Process and Equal Protection**

Petitioner relatedly argues his sentences violate due process and deny him equal protection because his sentences were more harsh than his co-defendants.  Once again, Petitioner cites no legal authority to support his claim.

Petitioner raised this claim in his state applications for habeas corpus review.  The state trial court found the claim had no merit.  The Texas Court of Criminal Appeals subsequently rejected the claim.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  The mere comparison of sentences between defendants is insufficient to establish a due process or equal protection violation.  Accordingly, Petitioner's claim does not warrant federal habeas relief.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained

the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

    In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

    The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

    A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.   See 28 U.S.C. § 636(b)(1)(C);   Thomas v. Arn, 474 U.S. 140, 150-153 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

      **SIGNED** on August 19, 2016.

_____

MARK  LANE
UNITED STATES MAGISTRATE JUDGE